IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02121-GPG

ANDREW J. O'CONNOR,

    Plaintiff,

v.

TOBEY BASSOFF,
JOLENE RADOSTIS,
RICK KELLOGG,
ROBBYN FERNANDEZ,
BRUCE MESSINGER,
RYAN ELEMENTARY SCHOOL, and
BOULDER VALLEY SCHOOL DISTRICT NO. RE2, individually and severally,

    Defendants.

---

ORDER TO DISMISS IN PART AND TO DRAW CASE

---

Plaintiff, Andrew J. O'Connor, has filed *pro se* a Fifth Amended Complaint (ECF No. 28). The Court must construe the Fifth Amended Complaint liberally because although Mr. O'Connor is trained as an attorney, he is not an active member of the bar, and is proceeding *pro se* in this action. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court should not be an advocate for a *pro se* litigant. *See id.*

Mr. O'Connor has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (ECF No. 23). Therefore, the Court must dismiss the action if Mr. O'Connor's claims are frivolous or malicious or seek damages from defendants who are immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i) & (iii). A legally frivolous

claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim. *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989). For the reasons stated below, the Court will dismiss the action in part as legally frivolous and the remaining claim will be drawn to a presiding judge and, if applicable, a magistrate judge.

**I.     Background**

Plaintiff alleges that his daughter, who is now a second grade student at Ryan Elementary, has suffered numerous injuries at school. In May of 2014, a classmate pushed his daughter down on the school playground as she was running to get into line. His daughter suffered scrapes to her knees and hands. On September 3, 2015, his daughter was called "stupid" by another student and she was again pushed to the ground. According to Plaintiff, the teacher, Defendant Radostis, never witnessed these incidents. On September 8, 2015, Plaintiff attended a PTA meeting at the school and asked Defendant Principal Bassoff why there wasn't better supervision on the playgrounds and classrooms and what was the school's policy on bullying. On or about September 15, 2015, his daughter apparently collided with another girl in the classroom and suffered a serious bruise to her forehead and a serious headache. The latest incident occurred on September 17, 2015. On that day, Plaintiff's daughter was tripped by a boy in her class and she fell and hit her chin on a desk and knocked a tooth out. She also suffered from a painful headache, deep scrapes and bruising to her chin.

Later that day, Plaintiff's wife emailed Defendant Radostis regarding the parents' concern about the incident and the lack of supervision. The teacher never responded to the email. So, the following morning, on September 18, 2015, Plaintiff and his wife went

to the school to drop off their daughter and schedule a time to meet with the teacher to discuss the incident and their concerns about their daughter's safety. According to Plaintiff, he and his wife spoke to Defendant Radostis in a respectful manner but the teacher became extremely defensive.

Later that day, Plaintiff received a telephone call from the Elementary School requesting that he meet with Defendant Principal Bassoff to discuss "partnering" with the school. The meeting was scheduled for September 22, 2015. Plaintiff's wife asked who would be at the meeting and she was told Defendants Bassoff and Radostis would be the only people there along with the Plaintiff and his wife.

On September 22, 2015, Plaintiff did not attend the scheduled meeting. At one point he claims he failed to attend because he was ill. (ECF No. 28 at 10). At another point, he alleges he "decided not to attend the meeting because of the unnecessary, acrimonious and antagonistic presence of the [BVSD] security guard." (ECF No. 28 at 7). Plaintiff's wife attended the meeting, but Defendant Radostis was not present. Instead, it was the principal, Defendant Bassoff, as well as the BVSD Security Services Manager, Defendant Kellogg (although, at one point, Plaintiff states the Security Services Manager in attendance was Chris Wilderman, *see* ECF No. 28 at 7). Plaintiff alleges that Defendant Bassoff engaged in unethical and unprofessional conduct by having a security guard at the meeting.

At the meeting, Plaintiff's wife received a letter addressed to Plaintiff and signed by Defendant Bassoff, as well as a document titled "Positive Parent Partnership," and Defendant Kellogg's business card. (*See* ECF No. 20 at 20-22).

The letter stated the following:

> I am concerned about the following report made to me:
>
> - Staff report that on Friday, September 18, 2015, you shared your concerns and opinions about [your daughter's] accident on school on Thursday, September 17, 2015, in a way that was hostile and confrontational and you did so in front of other students. You made [your daughter's] teacher and students feel uncomfortable, threatened and afraid.
>
> As the Principal of Ryan [Elementary School], I have the responsibility to respond to parental behaviors that are causing disruption in our school's ability to function and educate students. Therefore, I am hereby requesting that you abide by the following procedures while on our campus:
>
> 1. <u>I will be your point of contact for all school and class business</u>. When other staff members need to be involved, I will make the appropriate contact and/or deliver the necessary message. If a meeting is necessary, I will make the arrangements and be present for all meetings and conferences.
> 2. All visits to the school <u>must be approved and pre-arranged through me</u>.
> 3. You will comply with all Federal and State laws, Board Policies, and school procedures while on our campus.
>
> If you would like to discuss this letter and/or its contents with me, please contact me at (720)561-xxxx to arrange an appointment.

(ECF No. 20 at 20) (emphasis in original). Plaintiff alleges that the letter includes several material misrepresentations as well as false and defamatory accusations about Plaintiff. Also, at the September 22, 2015 meeting, Defendant Bassoff asked Plaintiff's wife to have Plaintiff call Defendant Kellogg. Accordingly, Plaintiff called Defendant Kellogg who was "hostile and threatening and told Plaintiff that if he stepped on campus to walk his daughter to her classroom that the school would call the police and be

4

arrested and that he would be banned from all BVSD campuses for a year." (ECF No. 28 at 11).

On September 22, 2015, Plaintiff wrote a letter of complaint to Defendant Messinger, the BVSD Superintendent, about safety concerns, an unsafe environment, negligent supervision by Defendant Radostis, and unethical and unprofessional conduct by Defendant Bassoff. (ECF No. 20 at 23-25).

On September 23, 2015, Defendant Messinger assigned Defendant Fernandez to investigate Plaintiff's complaint. Defendant Fernandez is the Executive Director for Elementary School Leadership for BVSD. Plaintiff had several telephone conversations and email exchanges with Defendant Fernandez.

On September 24, 2015, Defendant Fernandez emailed Plaintiff stating that she was "supporting the school in their request for you not to enter the school until you are able to meet and determine how best to work together." (ECF No. 20 at 26).

There is no indication that Plaintiff has ever personally met with Defendant Bassoff to discuss the situation, as Defendant Fernandez suggested and as the letter by Defendant Bassoff offered. Instead, on September 25, 2015, Plaintiff initiated this action.

Plaintiff brings three claims: (1) "Damages for Violation of First Amendment Right to Free Speech and for Due Process Violations"; (2) "Damages for Retaliation;" and (3) "Damages for Intentional Infliction of Severe Emotional Distress." (ECF No. 28). The Court will liberally construe the Fifth Amended Complaint as bringing claims for: (1) due process violations pursuant to § 1983; (2) free speech retaliation pursuant to § 1983; and (3) intentional infliction of severe emotional distress under Colorado state law.

5

## II. Analysis

The central issue in this case is whether banning Plaintiff from the Ryan Elementary School campus violated any of his constitutional rights.  Before discussing the specific claims, it is important to note that Courts are hesitant to get involved with decisions made by local schools unless there are truly constitutional violations.  The Supreme Court, addressing the issue of parental rights with respect to public schools, has stated:

> Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint…By and large public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values.

*Epperson v. State of Ark.*, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L. Ed. 2d 228 (1968).

That being said, however, parents have a constitutional right to direct their children's education. *Swanson v. Guthrie Independent School District No. I-L*, 135 F.3d 694, 699 (10th Cir. 1998). For example, courts have held that parents have a right to send their children to private school, whether that school is religious or secular. *Id.* (citing *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L. Ed. 1070, (1925)). "Numerous cases, however, have made it clear that this constitutional right is limited in scope." *Id.* Parents do not, for instance, have a right to exempt their children from certain reading programs the parents find objectionable, or from a school's community-service requirement. *Id.* (citations omitted).

### A.  Due Process Claim

In this case, Plaintiff alleges a due process violation because he is not able to take his daughter to school and participate in her education as a result of the school

campus ban. According to Plaintiff, he cannot walk his daughter to school, cannot attend parent-teacher conferences, cannot attend PTA meetings, and cannot attend her extracurricular activities. The Court disagrees.

The letter from Defendant Principal Bassoff specifically directs Plaintiff to pre-arrange visits to the school. So, while Plaintiff may not be able to walk his daughter to school every day, he can attempt to schedule a visit when there is a parent-teacher conference or an extracurricular activity. He is not subject to out-right permanent and all-encompassing ban. Further, Plaintiff is permitted to participate in his child's education by communicating with the principal about concerns via e-mail, phone, or letter. The "ban" at issue only prevents Plaintiff from physically entering school grounds without first pre-arranging the visit with the principal. Furthermore, if Plaintiff wanted to discuss the ban or attempt to get the ban modified or lifted, the principal told him to contact her. Further, Defendant Fernandez also told Plaintiff to contact the school officials to talk about working together. It appears that instead of trying to discuss the matter with Defendant Principal Bassoff, Plaintiff decided to file a lawsuit in federal court. Apparently, Plaintiff has failed to ever talk directly with the principal since the ban. He even failed to attend a scheduled meeting. Given the factual circumstances of this case and the limited ban in place, the court finds that Plaintiff's due process rights were not violated.

Additionally, the law is well established that parents have no constitutional right to physically access school grounds. *See Knight v. Bieneman*, No. 14-cv-2641, 2015 U.S. Dist. LEXIS 4305, 17-19 (D. Colo. Jan. 14, 2015)(dismissed complaint with prejudice because Plaintiff failed to state a claim for violation of his constitutional rights

based on being barred from physically entering his child's school grounds) (collecting cases); *Abegg v. Adams/Arapahoe Sch. Dist. J8*, 2012 U.S. Dist. LEXIS 187055, 2012 WL 7783087, at *5 (D. Colo. Oct. 9, 2012) (collecting cases); *Porter v. Duval Cnty. Sch. Bd.*, 406 Fed. App'x 460, 462 (11th Cir. 2010) (affirming dismissal of Due Process claim because parents had failed to show that they had a right to access school grounds); *Lovern v. Edwards*, 190 F.3d 648 (4th Cir. 1999); *Cunningham v. Lenape Regional High District Board of Education*, 492 F.Supp.2d 439 (D.N.J. 2007).  Accordingly, even if, as Plaintiff alleges, he was not threatening or abusive, the Defendants' actions did not violate his constitutional due process rights.  For example, in *Cunningham*, the federal court acknowledged that the substance and tone of plaintiff's contacts with the school were in genuine dispute, but held the disputes were not material to the underlying assertion of a violation of plaintiff's constitutional rights. *Cunningham*, 492 F.Supp.2d at 449.  In so ruling, the court stated: "As established, school officials are well within constitutional bounds in limiting access to school property where it is necessary to maintain tranquility." *Id.*  In *Lovern*, the Fourth Circuit stated, "School officials have the authority to control students and school personnel on school property, and also have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property." *Lovern*, 190 F.3d at 655. And, in *Goss v. Lopez*, 419 U.S. 565, 589-90, 95 S.Ct. 729, 42 L. Ed. 2d 725 (1975), the court stated, "this Court has explicitly recognized that school authorities must have broad discretionary authority in the daily operation of public schools. This includes wide latitude with respect to maintaining discipline and good order." In the educational context, courts-especially federal ones-are not the appropriate forum for resolving daily

conflicts arising from the operation of school systems. *Cunningham*, 492 F.Supp.2d at 450.  Therefore, Plaintiff's first claim of a due process violation will be dismissed as legally frivolous.

### B. Free Speech and Retaliation Claim

Plaintiff also alleges that the school banned him from campus in retaliation for him voicing his opinion and concerns to the school about the school's lack of safety and the on-going bullying of his daughter. (ECF No. 28 at 15). After review pursuant to D.C.COLOLCivR 8.1(a), the Court has determined that Plaintiff's § 1983 claim of free speech retaliation does not appear to be appropriate for summarily dismissal. Therefore, this claim will be drawn to a presiding judge and, if appropriate, to magistrate judge. *See* D.C.COLO.LCivR 8.1(c).

### C. Intentional Infliction of Severe Emotional Distress Claim

Plaintiff's final claim is that Defendants intentionally inflicted severe emotional distress upon him, his wife, and his daughter based on the constitutional violations.  The tort known as intentional infliction of emotional distress is a state law tort claim, first recognized by the Supreme Court of Colorado in *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753, 756.  The four essential elements of such a claim are that (1) the conduct is extreme and outrageous; (2) the conduct is intentional or reckless; (3) the conduct causes emotional distress; and (4) the distress is severe. *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1273 (3d Cir.). The tort of intentional infliction of emotion distress is extremely limited. *Marotta v. Cortez*, 2009 U.S. Dist. LEXIS 124566, 30-34 (D. Colo. Nov. 3, 2009).

Initially, the court must determine whether plaintiff has alleged conduct that is sufficiently outrageous. *See Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665-66 (Colo. 1999) (describing this tort as "intentional infliction of emotional distress by outrageous conduct"); *English v. Griffith*, 99 P. 3d 90, 93 (Colo. App. 2004) (citation omitted). "Where it is clear to the court that the conduct complained of cannot be considered as rising to the egregious standard required, a claim for outrageous conduct is properly dismissed." *Shackelford v. Courtesy Ford, Inc.*, 96 F. Supp. 2d 1140, 1146 (D. Colo. 2000). For the conduct to be considered extreme and outrageous, it must "go beyond all possible bounds of decency and ... be regarded as atrocious, and utterably intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'" *Rugg v. McCarty,* supra 476 P.2d at 756 (quoting comment d to § 46).

In this case, Plaintiff has failed to allege extreme and outrageous conduct. The "ban" at issue requires Plaintiff to pre-arrange visits to the school with the principal. Further, by Plaintiff's own allegations, since being "banned" from the school, he has never attempted to meet with Defendant Principal Bassoff. An average member of the community would never exclaim "Outrageous!" in response to hearing that a school principal would like to meet with a parent before allowing him on campus when there has been a dispute or misunderstanding between the parent and a teacher. As such, accepting Plaintiff's allegations as true, they do "not rise to the level of conduct which may be characterized as 'atrocious and utterly intolerable in a civilized community.'" *Hewitt v. Pitkin County Bank and Trust Co.*, 931 P.2d 456, 459 (Colo. App. 1995).

10

Therefore, Plaintiff's claim of intentional infliction of emotional distress will be dismissed as legally frivolous.

### III.   Orders

For the reasons discussed above, it is

ORDERED that Plaintiff's due process and intentional infliction of severe emotional distress claims are DISMISSED with prejudice as legally frivolous. It is

FURTHER ORDERED that Plaintiff's claim of free speech retaliation pursuant to § 1983 is drawn to a presiding judge and, if appropriate, to a magistrate judge. See D.C.COLO.LCivR. 8.1(c); D.C.COLO.LCivR 40.1(a).

DATED at Denver, Colorado, this  3rd  day of   December   , 2015.

BY THE COURT:

   s/Lewis T. Babcock   
LEWIS T. BABCOCK, Senior Judge
United States District Court